UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| INTERGROUP CORPORATION | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Civil Action No. 4:26-cv-1257 |
| | § | |
| CONVEX INSURANCE UK LIMITED and | § | |
| PALMS INSURANCE COMPANY, LTD | § | |
| *Defendants.* | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL APPRAISAL**

This is a valuation dispute, and the Policies give either side the right to resolve that dispute through appraisal. The following is undisputed: (i) Plaintiff's Property was damaged by a storm in March 2025; (ii) the Policies afford coverage to damage caused by that storm; (iii) the claim was accepted by Defendants; and (iv) Defendants issued substantial payments for the claim. The question at this point is simply, "What is the value of the damage sustained by Intergroup?" The Policy permits the parties to submit that question to an appraisal panel. As a result, Intergroup asks this Court to compel both Carriers to appraisal and to stay this case until the panel issues its award.

## I. Background

**The Policies**. Convex and Palms each insured the Property for the July 29, 2024 to July 29, 2025 policy period. **Exs. 01** and **02**; *see also* Compl. [Dkt. 01] ¶ 8. Palms wrote a 50% quota share of a $5,000,000 primary layer. **Ex. 02**. Its policy follows the form of the Convex Policy. *Id.*

**The Loss.** On or about March 14, 2025, a wind and hailstorm with winds of 85 to 95 miles per hour, and an EF2 tornado nearby, damaged the roofs, exteriors, windows, and interiors of the Property. Compl. [Dkt. 01] ¶¶ 10–12. Intergroup reported the claim within two weeks. *Id.* at ¶ 13.

**The Adjustment.** At this time, Plaintiff has limited insight into the arrangement among Convex, Palms, Engle Martin, J.S. Held, Hausch & Co., and Sedgwick. Even so, it appears to largely align with the following: Convex retained Hausch & Company to serve as its third-party administrator ("TPA"). *See* **Ex. 03**, Insurer Letter Dated June 26, 2025. Sedgwick similarly serves as a TPA for large insurance companies.[1] Here, Plaintiff does not have a letter stating that Palms retained Sedgwick to serve as its TPA, but payments from Palms were issued by Sedgwick.

Those TPAs—whether just on behalf of Convex as the lead or on behalf of both Convex and Palms—retained Engle Martin to serve as an outside adjuster. *See* **Ex. 05**, Engle Martin Letter Dated January 27, 2026. Engle Martin then retained J.S. Held, LLC to serve as the building consultant to estimate the damage from the storm. **Ex. 04**, J.S. Held Estimate.

J.S. Held inspected the Property on April 9, 2025, less than four weeks after the loss occurred. **Ex. 04**, J.S. Held Estimate. The estimate was not delivered to Plaintiff until July 2025, but it revealed that J.S. Held estimated $847,171.31 in damage to the Property. *Id.* at 178.

Over the next eight months, the claim continued to proceed through the adjustment process before the Carriers finally reached their "final" estimate of damage: $1,052,530.10. **Ex. 05**, Engle Martin Letter Dated January 27, 2026.

**The Payments.** The Carriers paid in installments: $75,000 (June 26, 2025), $75,000 (July 28, 2025), $185,655.79 (October 29, 2025), and $185,655.79 (February 12, 2026). Compl. (Dkt. 01) ¶¶ 31–38. The final check, issued through Sedgwick Delegated Authority, was made in early 2026. *Id.* at ¶ 39.

**The Disagreement.** Intergroup made written demand for the remaining unpaid amounts on May 4, 2026. The Carriers failed to respond to that demand letter. In the interim, Intergroup

[1] *See* https://www.sedgwick.com/claims-administration/international-tpa-services/

undertook a thorough analysis of the storm damage and reevaluated its calculations. On September 24, 2026, Intergroup's counsel provided a detailed estimate of damage contemporaneously with its invocation of appraisal. **Ex. 06**, Email Chain Dated October 7, 2026.

**The Appraisal Demand.** On September 24, 2026, Intergroup made written demand on both Carriers for appraisal. **Ex. 06**, Email Chain Dated October 7, 2026. The Carriers failed to respond to multiple emails and phone calls. *Id.*

## II. Policy Provisions

Convex and Palms jointly provide insurance coverage under a coordinated program. Convex provides the leading policy, which includes the following appraisal provision:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

**Ex. 01**, Convex Policy at p. 26. Per the Convex Policy, appraisal is mandatory where the parties "disagree on the value of the property or the amount of loss." *Id.*

The Palms Policy "follows" the Convex Policy. The Palms Policy provides that it "shall run concurrently with and be subject to the same terms, provisions and limitations of the policy listed below" and identifies the Convex policy. **Ex. 02**, Palms Policy at p. 6.

## III. Legal Standard

Missouri law governs the Policies in this diversity case. The Policies insure Missouri property, and Intergroup's claims arise under Missouri statutes. Where a policy is unambiguous,

Missouri courts enforce it as written. *Bellamy v. Pac. Mut. Life Ins. Co.*, 651 S.W.2d 490, 495 (Mo. banc 1983).

Missouri has long enforced appraisal clauses. "A provision in an insurance policy for the amount of the loss to be ascertained by appraisers in case of disagreement in relation thereto is binding and enforceable." *Lance v. Royal Ins. Co.*, 259 S.W. 535, 535 (Mo. Ct. App. 1924).

The dividing line is between the amount of loss and coverage. "[W]here the parties' disagreement is over the amount of loss, appraisal is appropriate." *Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI 12559 v. SSDD, LLC*, No. 4:13-CV-193 CAS, 2013 U.S. Dist. LEXIS 76584, at *24 (E.D. Mo. 2013).

**IV. Argument**

The Court should grant Plaintiff's motion to compel appraisal and stay the pending litigation. The dispute concerns amount of loss, not coverage.

Under Missouri law, "[a] provision in an insurance policy for the amount of the loss to be ascertained by appraisers in case of disagreement in relation thereto is binding and enforceable." *Olga Despotis Tr. v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1060 (8th Cir. 2017) (quoting *Lance v. Royal Ins. Co.*, 259 S.W. 535, 535 (Mo. Ct. App. 1924)). "Missouri law is clear that whether the appraisal provision of an insurance policy applies depends upon whether the dispute between the insurer and insured is properly characterized as a coverage dispute or a disagreement over the amount of the loss." *Am. Family Mut., Ins. Co. v. Dixon*, 450 S.W.3d 831, 835 (Mo. Ct. App. 2014) (quoting *Hawkinson Tread Tire Service Co. v. Indiana Lumbermens Mutual Insurance Co.*, 362 Mo. 823, 245 S.W. 2d 24 (Mo. 1951)).

Applying Missouri law regarding appraisals, this Court compelled appraisal where the insurer conceded the policy was in force, paid what it called covered losses, and disputed the

remaining valuation. *Taven Apartments Ltd. P'ship v. State Farm Fire & Cas. Co.*, No. 1:17-cv-00083-AGF, 2017 U.S. Dist. LEXIS 174905, at *6–8 (E.D. Mo. Oct. 23, 2017). There, the insurer conceded the policy was in force and had paid for covered fire losses but argued that the remaining dispute (whether the rebuilt structure was "of a like kind and quality") was a coverage question. *Id.* at *6–7. The Court disagreed. It held that "the dispute is centered on the valuation and cost of damages, repairs, and construction," which is a disagreement over the value or amount of loss, and granted the motion to compel appraisal. *Id.* at *7–8. Likewise, in *Underwriters at Lloyd's of London, Syndicate 4242 v. Tarantino Properties, Inc.*, the Western District of Missouri compelled appraisal over the insurer's argument that some of the loss was "caused by wear and tear, inadequate maintenance, prior losses, etc." No. 4:12-CV-00167-DGK, 2012 U.S. Dist. LEXIS 124972, at *10 (W.D. Mo. Sept. 4, 2012). The court explained: "The Court cannot allow [the insurer] to circumvent the appraisal provision the parties contracted for by casting the dispute in this light. The Policy clearly provides coverage for wind and hail damage, and [the insurer] has admitted some damage to the Properties was caused by wind and/or hail. Accordingly, the Court finds no meaningful dispute over coverage." *Id.* at *10–11.

Here, the parties are engaged in a valuation dispute. The Carriers believe the value of the loss is $1,052,530.10. **<u>Ex. 05</u>**, Engle Martin Letter dated January 27, 2026. Plaintiff believes the value of the loss is $6,471,041.67. Just as in *Taven Apartments*, the Carriers "determined that a covered loss has occurred within the coverage period for this policy" (**<u>Ex. 03</u>**) and the Carriers issued substantial payments on their own adjustment of the claim. **<u>Ex. 05</u>**, Engle Martin Letter dated January 27, 2026. If the Carriers now try to persuade the Court that there was wear and tear, inadequate maintenance, or a prior loss that would create a coverage question, the Court should see that for what it is: an attempt "to circumvent the appraisal provision the parties

contracted for." *Underwriters at Lloyd's of London, Syndicate 4242 v. Tarantino Properties, Inc.*, 2012 U.S. Dist. LEXIS 124972 at *10.

In contrast, the only cases in which Missouri courts decline appraisal are those where the real controversy is the insurer's liability in the first instance. *See, e.g., Cincinnati Ins. Co. v. Saint Louis Produce Mkts.*, No. 4:20-cv-00358-SNLJ, 2020 U.S. Dist. LEXIS 182099, at *2 (E.D. Mo. 2020) (denying motion to compel appraisal where insurer had made no payments on the claim because it claimed the majority of the damage was from an unrelated storm); *Burton v. GEICO Cas. Co.*, No. 4:20-cv-00360-MTS, 2021 U.S. Dist. LEXIS 158734, at *8 (E.D. Mo. Aug. 23, 2021) (denying motion to compel appraisal where the key question was whether an insurer owes sales tax and fees under the insurance policy); *Eastport Office Condo. Owners Assoc. Inc. v. Sentinel Ins. Co., Ltd.*, No. 4:22-CV-00297-FJG, 2022 U.S. Dist. LEXIS 239812, at *7 (W.D. Mo. Dec. 29, 2022) (denying motion to compel where the insurer was "not disputing the value or the amount of loss" but only "coverage analysis"). Here, the Carriers accepted the claim and paid the value of damage as they saw it.

As a result, the case should be referred to appraisal to determine the *value* of damages. The case should be stayed in the interim to preserve judicial resources, with the understanding that the parties agreed to temporarily abate this matter had they jointly submitted to appraisal. Joint Proposed Scheduling Plan [Dkt. 15] ¶ 4.

## V. Conclusion

The Carriers accepted this claim and paid what their own consultant said was owed. The only open question is the amount of loss, and both Policies commit that question to appraisal on the request of a party. Plaintiff respectfully requests that the Court grant its Motion, compel Convex and Palms to participate in appraisal under the Policies on the schedule set out in the

proposed order, direct an itemized award, and stay this action pending completion of the appraisal.

Respectfully submitted,

**RAIZNER SLANIA, LLP**

*/s/ Todd R. Wells*

Todd R. Wells
MO Bar ID: 69423
TX Bar ID: 24124620
2402 Dunlavy St., Suite 300
Houston, Texas 77006
Phone: 713-554-9078
Fax: 713.571.1148
twells@raiznerlaw.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

This certifies that, on October 9, 2026, a true copy of the foregoing was served on the following counsel of record pursuant to the Federal Rules of Civil Procedure:

Wm. Clayton Crawford
BAKER STERCHI COWDEN & RICE, LLC
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108

Lisa M. Verity
BAKER STERCHI COWDEN & RICE, LLC
100 S. 4th Street, Suite 900
St. Louis, MO 63102

Todd M. Tippett (Pro Hac Vice Pending)
Zelle, LLP
901 Main Street, Suite 4000
Dallas, TX 75202
**ATTORNEYS FOR DEFENDANT**

*/s/ Todd R. Wells*
Todd R. Wells