# EXHIBIT C

RAIZNER SLANIA

Andrew P. Slania
Partner

aslania@raiznerlaw.com
713.554.9085

May 4, 2026

***Via Federal Express***
Convex Insurance UK Limited
52 Lime Street
London, UK EC3M 7AF

***Via Federal Express***
Palms Insurance Company, Limited
64 Sheddon Road
George Town, KY1-1104
Cayman Islands

Re: Our client – Intergroup Corporation
Address – 3209 Cross Keys Drive, Florissant, MO
Convex Policy number – CPR000480-0724
Palms Policy number – PLM-00860-24
Palms Claim number – 4249749
Date of Loss – March 15, 2025

To Whom It May Concern:

We represent Intergroup Corporation ("Intergroup"). The following is a demand letter for the above-referenced matter.

**The acts and omissions giving rise to the claim.** Our investigation indicates that your companies are in violation of its duty of good faith and fair dealing and in breach of the applicable insurance policy. Your companies and their representatives failed to perform a thorough investigation of our client's claim, failed to employ appropriate or qualified consultants to evaluate the damages, delayed resolution of the claim under Missouri law, and misrepresented applicable scopes of damages as well as the terms of the policy. Adjusters employed by your companies violated the law through their own acts and omissions in the handling of the claim. Because of these violations of law and wrongful conduct, our client has sustained and continues to sustain significant damages, including but not limited to property damage, diminution of property value, attorney fees, financial harm, and other consequential damages.

Specifically, on March 15, 2025, a wind and hailstorm struck the property. The wind and hail caused substantial damage to the insured property, including damage to the roof system, interior, exterior, and more. Our client's professional consultants identified dramatic damage to the property as a direct result of the wind and hailstorm. Nonetheless, despite the correlation between damaging wind and hail and the obvious property damages, the Carriers derailed the claim process and

repeatedly undervalued the extensive damages. Andrew Brown of Engle Martin was assigned to investigate the claim and determine the extent of the damage. Trevor Cruce from JS Held inspected the property on April 9, 2025. The Carriers relied upon their opinions for its coverage decision. Despite clear evidence of covered damage, the Carriers engaged in and ratified this improper claim conduct and ultimately declined to issue a full payment. The Carriers failed to fully pay the loss without reasonable cause or excuse. The Carriers omitted important facts, physical evidence, and meteorological data supporting our client's claim. The Carriers instead unreasonably blamed the loss on causes other than wind and hail in an effort to avoid contractual responsibilities and to save the Carriers significant sums of money. Our client cooperated throughout the claim process.

**The Carriers' conduct is part of a pattern and practice of extra-legal, anti-business conduct directed toward policyholders.** Unfortunately, the Carriers have a history of conducting arbitrary, outcome-oriented investigations intended to deny valid claims.

**The specific amounts owed by the insurer on the claim for damage to the covered property.** The estimates of damages reflect damage to the covered property in the amount of $1,256,665.88. Our records indicate payments totaling $521,311.58 have been made. After applying the deductible, **$420,674.38** remains due to our client. In pursuit of an early resolution, my client asserts that this specific amount is owed by the insurer on the claim for damage to or loss of covered property. This amount is specified solely for purposes of settlement at this early stage, and should the Carriers choose to require active litigation, we expect that any settlement demands in the future will be different. Specifically, this figure is not intended to be a final cap on our client's claim or damages should the Carriers not pay the amount today.

**Reasonable and necessary attorney's fees.** At this time, our firm has incurred $2,950.00 in reasonable and necessary attorney's fees. However, we are willing completely waive this amount if the Carriers elects to promptly settle this claim prior to the commencement of litigation.

**Production of a Certified Copy of the applicable insurance policy.** The Carriers must produce to us a correct, certified copy of the applicable insurance policy within the next thirty days.

**Production of the Claims File.** The Carriers and adjusting firm must produce to us their complete claims file within the next thirty days. This should include any estimates, engineering or other consultant reports, and all materials that the Carriers created or relied upon to process the claim.

**Production of underwriting reports and materials.** Most insurance companies conduct a thorough underwriting process prior to entering into an insurance contract. This process typically includes completion of an underwriting inspection or loss control survey. These reports have material

information about the condition of the property prior to the loss. The Carriers must produce to us any such reports within the next thirty (30) days.

**Responsible communication.** We will endeavor to facilitate any appropriate communications among the parties in this matter. Please assist us by respecting our representation of our client. Any further communications directed toward our client should be made through our firm.

**Appraisal.** In this communication, we have endeavored to provide a detailed assessment of our client's claim, so that you can decide whether we are at an impasse. Should the Carriers wish to have a productive discussion towards settlement, we will not contend that good faith settlement discussions result in a waiver of any contractual right to appraisal. However, in the event the Carriers chooses not to respond to this demand letter, we will conclude that the parties have reached an impasse and will file suit. We ask that you exercise any appraisal rights under the policy immediately and avoid the abusive practice of delaying the invocation of appraisal until after a mediation, following negative developments in discovery, or to avoid a trial setting. This type of gamesmanship is improper and drives up costs for all parties. Accordingly, if you seek to invoke the appraisal process should do so not later than sixty (60) days after receipt of this demand letter.

We respectfully request a response to this letter within the next sixty (60) days. A copy of this letter has been provided to our client, the claimant. We welcome the opportunity to settle this claim.

Sincerely,

Andrew P. Slania
Partner